UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA SMITH,<br>　　　　Plaintiff,<br>　v.<br>CAROLYN W. COLVIN,<br>　　　　Defendant. | Case No. 14-cv-00721-KAW<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>Re: Dkt. Nos. 14 & 15 |

Plaintiff Anita Smith seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court grants Plaintiff's motion for summary judgment, denies Defendant's cross-motion for summary judgment, and remands the case for further proceedings consistent with this order.

## I.　BACKGROUND

On February 14, 2011, Plaintiff Anita Smith filed concurrent applications for Title II Disability Insurance ("DI") Benefits and Title XVI Supplemental Security Income ("SSI") Benefits. Administrative Record ("AR") 20, 199-211. Plaintiff alleges a disability onset date of July 22, 2009. AR 199. Plaintiff's claims were initially denied on June 17, 2011. AR 66-87, 114-18. Plaintiff filed a Request for Reconsideration that was denied on November 14, 2011, and a Request for Hearing on November 21, 2011. AR 90-113, 125-26. A hearing was held before Administrative Law Judge Mary P. Parnow August 6, 2012. AR 39.

Plaintiff is fifty-five years old. AR 199. Plaintiff has suffered from severe Depression

since March 2008. AR 367. Plaintiff has received regular treatment since that time, but her Depression has remained severe and has prevented her from working regularly since July 23, 2009, her alleged onset date, when she underwent a partial hysterectomy. AR 43, 367-84, 388-92. Plaintiff testified that, since that date, she has had difficulty working due to the combined effects of the hysterectomy, and changes in her mood, compounded by the sudden loss of her mother, father, and only brother. AR 43. She testified that she briefly returned to work in a temporary position for about four months in 2011, but that she has not been able to return to work since that time, and that her health has gotten worse. AR 45-51.

On October 23, 2008, Plaintiff obtained an initial psychiatric assessment at Sausal Creek Outpatient Stabilization Clinic. AR 367-74.  She stated that she was still working through the grief of her mother's passing. AR 367.  Plaintiff was diagnosed with Depression NOS and complicated bereavement, and was assigned a GAF score of 40. AR 370.  She was prescribed psychotropic medications and a follow-up appointment was scheduled at Eastmont Wellness Center. AR 373-74.

In July 2009, Plaintiff underwent a partial hysterectomy. AR 393-406.  There is no evidence that Plaintiff received any additional mental health treatment between October 2008 and May 13, 2010, when she was seen at John George Psychiatric Hospital for feeling "really overwhelmed and depressed." AR 375-79.  On March 13, 2010, Plaintiff reported that she suffered from "worsening depression w[ith] crying spells, poor sleep, poor energy, poor appetite, poor concentration." AR 375.  Plaintiff also reported that she had been taking Celexa, but had not taken it in several months because she had failed to follow up. *Id.*  Dr. Cindy Le, M.D., diagnosed Plaintiff with Major Depressive Disorder, Single Episode, Unspecified, and assigned Plaintiff a GAF score of 60. AR 376.

On October 11, 2010, Plaintiff had a follow-up appointment at the Alameda County Medical Center adult clinic, where it was noted that she had depression and anxiety. AR 411-12. On April 12, 2011, Plaintiff attended another follow-up appointment, where she reported that the antidepressants helped her and that she was "not cry[ing] all the time and [her] depression [was] manageable." AR 409.  Plaintiff obtained antidepressant prescription refills on both visits. AR

2

409, 411.

On May 18, 2011, Plaintiff underwent a consultative examination performed by Dr. Arpaci, Psy.D. AR 388-92. Dr. Arpaci diagnosed Plaintiff with Major Depressive Disorder and assigned her a GAF score of 55. AR 391. Plaintiff reported that she took her medication regularly, which helped her to cry less frequently, but she continued to feel helpless and sad. AR 389. Plaintiff also reported that while she finds her medications helpful, "she feels less organized, anxious and worried." *Id.* Plaintiff reported that she had never been to therapy, because she did not have health insurance. *Id.* Plaintiff reported that she lived alone and had last worked in July 2009, when she held a temporary position performing administrative support work. AR 390. Plaintiff also reported that she had applied for a "great number" of jobs, but had been unsuccessful. *Id.* Dr. Arpaci opined that Plaintiff's prognosis was "[f]air to guarded" and that Plaintiff reported hopelessness generally, as well as related to her unemployment and financial stressors. AR 391.

On June 6, 2011, Dr. Phaedra Caruso-Radin, Psy.D, performed a case review of Plaintiff's available medical records. AR 66-76. Based upon a review of those records, and without meeting Plaintiff, Dr. Caruso-Rudin diagnosed Plaintiff with affective disorders. AR 71. Dr. Caruso-Rudin opined that Dr. Arpaci's finding that Plaintiff was moderately impaired "is not so well supported by the evidence." *Id.* Rather, Plaintiff "is mildly impaired in most areas." *Id.* Despite this disagreement, Dr. Caruso-Rudin gave "great weight" to Dr. Arpaci's opinion. AR 73. Dr. Caruso-Rudin noted that Plaintiff is applying for jobs and has had two interviews, which suggests that she is motivated to find work. AR 71. Dr. Caruso-Rudin found that Plaintiff was not disabled under the Social Security Act. AR 76. On September 29, 2011, case review physician Dr. D.V. Lucila, M.D.,[1] reviewed the record and agreed with Dr. Caruso-Rudin's findings. AR 90-100.

On January 12, 2012, Plaintiff attended a follow-up appointment at the Alameda County Medical Center adult clinic, where she obtained another prescription for antidepressant medication and received a referral to psychiatry. AR 407. Plaintiff's medical records note that she felt

---

[1] The ALJ misspelled Dr. Lucila's name as "Lucia." AR 27, 96.

depressed despite taking her medication. AR 408.

On January 19, 2012, Plaintiff underwent a functional assessment at Eastmont Wellness Center, which indicated that she was unable to work on a temporary basis for three months. AR 416. On February 24, 2012, Plaintiff was again evaluated and then found to be persistently unable to work for 12 or more months. AR 438. Additionally, her examiner found that she had physical limitations that allowed her to occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. AR 439.

On June 28, 2012, Plaintiff was seen by Dr. Hiawatha Harris, M.D. at Pathways to Wellness, upon referral from Sausal Creek. AR 469, 471. Dr. Harris noted that Plaintiff's mood was depressed and tearful, and her affect was dysphoric. AR 468. Dr. Harris opined that Plaintiff experienced moderate limitations in her activities of daily living, marked difficulties in maintaining social functioning and relationships, moderate difficulties in maintaining concentration, and experienced moderate episodes of decomposition and increase of symptoms, each of extended duration. AR 469. Plaintiff was diagnosed with Major Depressive Disorder, high blood pressure, and assigned a GAF score of 55. AR 469.

On June 30, 2012, Plaintiff went to the emergency room at Highland Hospital. AR 459. Plaintiff received a medical refill for her psychiatric medications, and was diagnosed with Bradycardia, which is a slower than normal heart rate. *Id.* On July 18, 2012, Plaintiff had a follow-up appointment at Eastmont Wellness Center, and the treatment notes indicate that her bradycardia was asymptomatic, and she was referred to cardiology. AR 453.

On July 19, 2012, Dr. Harris saw Plaintiff. AR 472. Dr. Harris' treatment notes indicate that Plaintiff was calm, had normal speech, but her mood was mixed. *Id.* Dr. Harris assigned Plaintiff a GAF score of 60. *Id.*

In a decision dated September 28, 2012, the ALJ found that Plaintiff was not disabled. AR 20-31. On December 3, 2012, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 15-16. Plaintiff also submitted a letter dated January 4, 2013, to the Appeals Council. AR 364-66. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on December 13, 2013. AR 1-6. Plaintiff now seeks judicial

review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

On June 18, 2014, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt. No. 14.). On July 16, 2014, Defendant filed its opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 15.) On July 30, 2014, Plaintiff filed her reply. (Pl.'s Reply, Dkt. No. 16.)

## II.   LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the

fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, she is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III.   THE ALJ'S DECISION

The ALJ found at step one that Plaintiff had been engaged in some substantial gainful activity since the application date, but not since July 2011, when she completed a four-month temporary position at California State University East Bay ("CSUEB"). AR 22-23. At step two, the ALJ found that Plaintiff's only severe impairment was Major Depressive Disorder. AR 23. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, but found that the she had "a mild degree of restriction relative to activities of daily living; a moderate degree of difficulty relative to social functioning; a moderate degree of difficulty relative to concentration, persistence or pace; no episodes of decompensation, which have been of extended duration." AR 24. At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work, but had the residual functional capacity ("RFC") to perform "nonpublic simple repetitive tasks with no exposure to concentrated pulmonary irritants." AR 24. At step five, based on the RFC and the testimony from a vocational expert, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act, because she could perform jobs that exist in significant numbers in the national economy. AR 30-31.

///

## IV.   DISCUSSION

Plaintiff makes five arguments in her motion for summary judgment:  (1) that the ALJ erred by rejecting the opinions of Plaintiff's treating sources without clear and convincing or specific and legitimate reasons supported by substantial evidence; (2) the ALJ erred by rejecting the opinions of an examining medical source without clear and convincing explanation; (3) the ALJ erred by failing to identify which portions of Plaintiff's testimony were not credible and by failing to provide specific, clear, or convincing reasons for rejecting Plaintiff's testimony, leading to an RFC that is not supported by substantial evidence; (4) the ALJ's RFC assessment is defective because it does not include all of Plaintiff's non-exertional limitations, particularly in the areas of social functioning and maintaining adequate attention and concentration; and (5) the ALJ erred at step five by relying on an improper hypothetical to conclude that Plaintiff was not disabled. (*See* Pl.'s Mot. at 4-13.)

The Court will address each argument in the order of the five-step evaluation.  There is no dispute that Plaintiff is not currently engaged in a substantial gainful activity, but was temporarily employed as an office clerk from March to July 2011, nor is there dispute that Plaintiff has a medically severe impairment.  Therefore, the analysis proceeds to step three to determine whether this impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(d).

**A.   The ALJ erred by rejecting the opinions of Plaintiff's treating medical sources without clear and convincing or specific and legitimate reasons.**

The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the record contains conflicting medical evidence, the ALJ must make a credibility determination and resolve the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence...." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately

supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citations omitted).

Psychologists and psychiatrists, in diagnosing mental illness, often make five different sub-diagnoses, on what they call "Axes." *Williamson v. Astrue*, No. EDCV 12–00364–CW, 2013 WL 141544, at *4 n. 4 (C.D. Cal. Jan. 10, 2013). Axis V measures the Global Assessment of Functioning ("GAF"). *Id.* The GAF is a scale ranging from zero to 100, used to rate social, occupational and psychological functioning on a hypothetical continuum of mental health. *Id.* The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. *Sigmon v. Kernan*, No. CV 06–5807 AHM (JWJ), 2009 WL 1514700, at *9 n.3 (C.D. Cal. May 27, 2009).  A GAF score may help an ALJ assess mental residual functional capacity, but is not raw medical data. People with a GAF score of 41 to 50 have "serious symptoms" or any serious impairment in social, occupational or school functioning. *Williamson v. Astrue*, No. EDCV 12–00364–CW, 2013 WL 141544, at *4 n.5 (C.D. Cal. Jan. 10, 2013). By contrast, a GAF score of 51 to 60 indicates only "moderate difficulty in functioning." *Atkinson v. Astrue*, No. 2:10–cv–02072–KJN, 2011 WL 4085414, at *10 (E.D. Cal. Sept. 13, 2011). People in that category may have flat affects, circumstantial speech, occasional panic attacks, few friends, or conflicts with coworkers. *Id.* A GAF score of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational or school functioning but generally functioning well with some meaningful interpersonal relationships. *Sigmon v. Kernan*, No. CV 06–5807 AHM (JWJ), 2009 WL 1514700, at *9 n.3 (C.D. Cal. May 27, 2009).

Plaintiff argues that the ALJ rejected the medical opinions of her treating medical sources at the Sausal Creek Outpatient Stabilization Center, John George Psychiatric Pavilion, Eastmont Wellness Center, and Pathways to Wellness without providing clear and convincing reasons supported by substantial evidence. (Pl.'s Mot. at 5.)  Instead, Plaintiff contends that the ALJ relied on the opinions of Dr. Caruso-Radin and Dr. Lucila, two non-treating, non-examining medical consultants to support her finding that Plaintiff was not disabled. (Pl.'s Mot. at 7.)

In evaluating medical evidence from different physicians, the Ninth Circuit distinguishes between the opinions of three types of physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1995). The three categories are as follows: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Id.* at 830. Generally, more weight should be given to the opinion of the treating physician than to the opinion of doctors who do not treat the claimant. *Id.* The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor and, if contradicted, only for specific, legitimate reasons supported by substantial evidence. *Id.* Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is accepted as true. *Id.* at 834.

The ALJ failed to articulate why she was rejecting the medical opinions of Plaintiff's treating physicians. *See* AR 26. Instead, the ALJ simply concluded that "although it was noted that [Plaintiff] had 'moderate' episodes of decompensation, each of extended duration, such a finding is not supported by the objective medical record. AR 26. The ALJ did not identify which objective medical evidence supported her conclusion. *See id.* The ALJ then found that "the assessments of Drs. Arpaci, Caruso-Radin, and [Lucila] are essentially consistent and entitled to significant evidentiary weight." AR 27.[2]

When an ALJ fails to properly reject a treating or an examining physician's medical opinion, that medical opinion must be accepted as true. *Pierce v. Astrue*, 382 F. App'x 618, 619-20 (9th Cir. 2010)(reversed district court order affirming ALJ's decision that provided no explanation for why he rejected an examining physician's findings). In *Pierce*, The examining physician opined that the claimant was limited to standing/walking for two hours out of an eight hour workday, and, therefore, could only perform sedentary work. *Id.* at 619. The ALJ, however, found that the claimant retained an RFC to perform unskilled work with a sit/stand option without explaining why he rejected the physician's sedentary limitation. *Id.* The ALJ's failure to explain the deviation fell "far short of providing clear and convincing reasons" and required that the

---

[2] The Court notes that Drs. Caruso-Rudin and Lucila disagreed with Dr. Apaci's diagnosis of depression. Instead, both reviewing doctors diagnosed Plaintiff with affective disorders. AR 71, 96.

9

1  physician's opinion be treated as true. *Id.* (citing *Lester v. Chater*, 81 F.3d at 830).

2  Similarly, here, the ALJ did not provide any reason for rejecting the medical opinion of
3  Plaintiff's treating physicians. The May 13, 2010 assessment performed by Dr. Cindy Le, M.D.,
4  diagnosed Plaintiff with Major Depressive Disorder and assigned Plaintiff a GAF score of 60. AR
5  375-79. Dr. Le's notes indicate that she believed that Plaintiff posed a behavioral risk of suicide.
6  AR 378. Plaintiff's records from Eastmont Wellness Center show that she was primarily treated
7  by Dr. Grace Lat, M.D. *See* AR 380-87, 428-39, 474-80. On May 19, 2010, Dr. Lat indicated that
8  Plaintiff suffered from "Severe Depression." AR 385. On February 22, 2012, Huong Le, MA, also
9  of Eastmont, indicated that Plaintiff's Depression was inadequately controlled by her current
10 medication. AR 432. On March 6, 2012, Dr. Lat indicated that Plaintiff was unable to work due to
11 Depression, that her condition was "persistent (not able to work for 12 mos. or more)." AR 438-
12 39. On May 25, 2012, Plaintiff was noted to have both Depression and Anxiety and they
13 increased her dosage of medication. AR 477. While Dr. Lat's opinion of Plaintiff's ability to work
14 is not controlling, it contradicts the ALJ's opinion that Plaintiff's mental status was stable. *See* AR
15 26.

16 Additionally, Plaintiff's records from Pathways to Wellness support a finding that
17 Plaintiff's mental impairment prevents her from working. AR 464-73. On June 28, 2012. Dr.
18 Harris diagnosed Plaintiff with Major Depressive Disorder, and assigned Plaintiff a GAF score of
19 55. AR 469. Dr. Harris also noted marked difficulties in maintaining social
20 functioning/relationships, moderate restriction of activities of daily living, moderate difficulties in
21 maintaining concentration and persistence, and moderate episodes of decompensation and increase
22 of symptoms, each of extended duration. AR 465-71.

23 The records and opinions from these four treating sources are consistent and provide
24 substantial evidence that Plaintiff's condition has persisted and resulted in at least moderate non-
25 exertional limitations since at least October 2008. A claimant's treating physicians are entitled to
26 special consideration. *Delegans v. Colvin*, 584 F. App'x 328, 331 (9th Cir. 2014) (citing *Orn v.
27 Astrue*, 495 F.3d 625, 631-33 (9th Cir. 2007). Generally, the ALJ's failure to provide adequate
28 reasons for rejecting the medical opinions requires that they be accepted as true. *Lester*, 81 F.3d at

10

834 (citing *Hammock v. Bowen,* 879 F.2d 498, 502 (9th Cir. 1989)).[3]  Plaintiff's treating physicians agree that Plaintiff has depression and experiences limitations at step three.  The ALJ's failure to present any reliable, conflicting medical evidence or specific and legitimate reasons for rejecting the opinions, requires that the Court reverse the ALJ's finding at step three, and remand for further proceedings consistent with this order. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1107 (9th Cir. 2014).

### B. The ALJ erred by rejecting the opinions of an examining medical source without clear and convincing explanation.

Plaintiff argues that the ALJ rejected the medical opinions of Dr. Apaci, her examining medical source, without adequate explanation. (Pl.'s Mot. at 7.)  On May 18, 2011, Dr. Apaci performed a consultative examination, and diagnosed Plaintiff with Major Depressive Disorder, and assigned her a GAF score of 55. AR 391.  Plaintiff reported that despite taking her medication regularly, she continued to feel helpless and sad, but "feels less organized, anxious and worried." AR 389.  Dr. Arpaci opined that Plaintiff's prognosis was "[f]air to guarded" and that Plaintiff reported hopelessness generally, as well as related to her unemployment and financial stressors. AR 391.

The ALJ did not provide an adequate explanation for rejecting Dr. Arpaci's opinion regarding Plaintiff's moderate limitations. Specifically, the ALJ stated that she rejected Dr. Apaci's opinion regarding the moderate restrictions based on Dr. Caruso-Radin's report, which provided that the restrictions were not well supported by the treating source record. AR 27.  This, however, is inaccurate, because Dr. Arpaci's findings are consistent with the record and the opinions of Plaintiff's treating medical sources, which found that Plaintiff has moderate limitations. *See* discussion *supra* Part IV.A.  Instead, the ALJ interpreted Dr. Arpaci's findings that Plaintiff can follow simple instructions, and is only mildly impaired in the ability to perform one or two step simple repetitive tasks, to conclude that Dr. Arpaci's other findings were not

---

[3] That there is evidence in the record that could justify a rejection of those medical opinions is immaterial.  *See Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000) (physician's opinion to be accepted as true even if there was evidence that could have been used to reject it).

1   supported by the record. AR 27.  The ALJ's rejection of Dr. Arpaci's findings due to a conflicting

2   report of a non-examining doctor is not a specific, legitimate reason nor is it supported by

3   substantial evidence.  Therefore, the Court will accept Dr. Arpaci's opinion as true in regards to

4   Plaintiff's moderate limitations, and remands the case for further proceedings consistent with this

5   order.

**C.   The ALJ erred by failing to identify which portions of Plaintiff's testimony were not credible and for failing to provide specific, clear and convincing reasons for rejecting Plaintiff's testimony.**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir.2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.*  The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints; general findings are insufficient. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Plaintiff argues that the ALJ's adverse credibility determination suffers from two deficiencies. (Pl.'s Mot. at 10.)  First, "the credibility finding is not sufficiently specific because it fails to identify which of the symptoms that Plaintiff testified to were not credible, and thus necessarily fails to identify what evidence undermined those particular symptoms." *Id.*  Here, the ALJ states that Plaintiff's "depressive symptoms are not normally seriously debilitating" as evidenced by her sporadic mental health treatment. AR 28.  The ALJ cites to the May 13, 2010 incident when Plaintiff went to John George Psychiatric Pavilion due to an episode that resulted from her running out of medication and not obtaining a new prescription. AR 28-29.  The medical evidence shows, however, that Plaintiff's symptoms were not stable even when she was compliant

and regularly taking her medication. *See* AR 389, 432, 438-39. This suggests that her mental status is not currently stable. That the ALJ ignored the more recent medical evidence is not a clear and convincing reason to discredit her testimony.

Second, the ALJ's proffered reasons for discrediting Plaintiff's testimony do not constitute clear and convincing reasons to reject Plaintiff's symptom testimony, nor are they supported by substantial evidence in the record. (Pl.'s Mot. at 10.) Indeed, the ALJ calls into question Plaintiff's veracity based on her statements to Dr. Arpaci in 2011 that her last work had been performed in July 2009, even though she was temporarily employed at the time of her assessment. AR 28. As an initial matter, there is no indication that she was asked if she was presently employed or otherwise misrepresented her employment status. In fact, Plaintiff testified truthfully at her hearing that she had been temporarily employed at CSUEB for four months. AR 44-45.

Further, claimants are encouraged to find employment that they can perform, so Plaintiff's temporary employment of less than six months, during which she missed work due to her own medical appointments, may not constitute substantially gainful activity or a successful work attempt. "[S]ubstantial gainful activity means more than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time." *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999) (two months not a significant period of time to find substantial gainful activity). "Where it is established that the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity." *Id.* That Plaintiff may be employable is not enough. *Gatliff*, 172 F.3d at 693. Rather, she must be able to remain employed. *Id.* Engaging in temporary employment does not automatically disqualify Plaintiff from obtaining benefits, particularly when she missed work for medical appointments. Whether her temporary employment was substantial gainful activity needs further development in the record, and the Commissioner shall obtain additional information to make a cogent determination on remand.

Even if the ALJ identifies the specific testimony she finds not credible, in order to reject a claimant's subjective complaints, an ALJ must give "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Without affirmative evidence showing that the

1    claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be clear

2    and convincing.  *See id.*; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.

3    1999).  The ALJ resolves questions of credibility and conflicts in the testimony.  *See Yuckert v.*

4    *Bowen*, 841 F.2d 303, 307 (9th Cir. 1988).  The ALJ did not clearly identify which portions of

5    Plaintiff's testimony she rejected, rendering her adverse credibility finding erroneous.

Accordingly, the ALJ improperly discredited Plaintiff's testimony, because she failed to identify any sufficient evidence to undermine the claimant's subjective complaints.  Remand is not an opportunity to correct the original decision's deficiencies outlined above in an attempt to justify the original result. Specifically, the ALJ should not attempt to further discredit Plaintiff's testimony regarding the severity of her symptoms. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1398-99 (9th Cir. 1988) ("Requiring the ALJs to specify any factors discrediting a claimant at the first opportunity helps to improve the performance of the ALJs by discouraging them from 'reach[ing] a conclusion first, and then attempt[ing] to justify it by ignoring competent evidence in the record that suggests an opposite result.'").

### D. The Residual Functional Capacity relied upon by the ALJ is not supported by substantial evidence in the record.

Plaintiff contends that the Residual Functional Capacity ("RFC") relied upon by the ALJ is not supported by substantial evidence in the record. A Social Security claimant's RFC is what the claimant is capable of doing despite his or her mental and physical limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Mayes v. Massanari,* 276 F.3d 453, 460 (9th Cir. 2001). An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The ALJ must consider all relevant evidence in formulating an RFC, and "an RFC that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690. The ALJ's findings may be set aside if not supported by substantial evidence. *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002); *Smolen*, 80 F.3d at 1279. An ALJ may omit limitations arising out of a claimant's subjective complaints only if the subjective complaints have been properly discredited. *See Lingenfelter*, 504 F.3d at 1040-41

1  (RFC excluding subjective limitations was not supported by substantial evidence where the ALJ
2  did not provide clear and convincing reasons for discrediting claimant's testimony).

3  Here, the ALJ found that Plaintiff has the RFC to "perform a full range of work at all
4  exertional levels" with restriction to "nonpublic simple repetitive tasks with no exposure to
5  concentrated pulmonary irritants." AR 24. As discussed above, this RFC omits the various
6  moderate non-exertional limitations identified by Plaintiff's treating medical sources, and by an
7  examining source. *See* discussion *supra* Parts IV.A-B. Therefore, the RFC was incomplete and not
8  supported by the medical evidence.

9  Accordingly, since the ALJ's RFC is not based on substantial evidence, it must be set
10 aside.  On remand, the RFC shall also include those limitations identified by Plaintiff's treating
11 sources and Dr. Arpaci, the examining source.

12 **E.     The ALJ relied on an incomplete hypothetical to find Plaintiff not disabled.**

13 Plaintiff argues that the ALJ erred by relying on vocational expert ("VE") testimony based
14 on a hypothetical that did not include all of Plaintiff's limitations to find that Plaintiff was not
15 disabled. (Pl.'s Mot. at 12.)

16 After finding that Plaintiff had no past relevant work at step four of the sequential
17 disability analysis, the burden shifted to the ALJ to demonstrate that Plaintiff is not disabled and
18 can engage in work that exists in significant numbers in the national economy. *Hill v. Astrue*, 698
19 F.3d 1153, 1161 (9th Cir. 2012). The ALJ may meet this burden at step five by "asking a
20 vocational expert a hypothetical question based on medical assumptions supported by substantial
21 evidence in the record and reflecting all of the claimant's limitations, both physical and mental,
22 supported by the record." *Id.*

23 If the ALJ's question to a VE fails to include all of the impairments from which the
24 claimant suffers, then the expert's testimony cannot constitute substantial evidence upon which to
25 base a conclusion that the claimant is not entitled to benefits. *Id.* at 1162.  The ALJ's RFC
26 included Plaintiff's ability to "perform a full range of work at all exertional levels" with restriction
27 to "nonpublic simple repetitive tasks with no exposure to concentrated pulmonary irritants." AR
28 24.  The ALJ, however, discounted the limitations identified by Plaintiff's treating sources,

15

including the exertional limitation that she can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, and the non-exertional limitations that she was moderately limited in her activities of daily living, had marked difficulties in maintaining social functioning and relationships, moderate difficulties in maintaining concentration, and experienced moderate episodes of decomposition and increase of symptoms, each of extended duration. AR 439, 469.

At the hearing, the ALJ asked the VE whether jobs exist in the national economy or whether there was other work that could be performed by an individual who "is limited to simple, repetitive tasks in a non-public environment." AR 59. The VE responded that Plaintiff could work as an office cleaner, janitor, or order filer. AR 59-60. The ALJ then posed a second hypothetical which added the limitation that the individual "has to avoid concentrated exposure to pulmonary irritants," which also did not preclude work. AR 60. The ALJ then posed a third hypothetical which added mild limitation in the ability to maintain adequate pace or persistence to perform one or two-step, simple, repetitive tasks, a moderate limitation in the ability to maintain adequate pace or persistence to perform complex tasks, and various other moderate non-exertional limitations that are supported by substantial evidence in the record, including the ability to maintain adequate attention and concentration. AR 62. In response to the third hypothetical, the VE testified that such an individual would be unemployable. AR 63. The ALJ further testified that the individual would not be able to maintain employment if they had two or more unplanned absences per month. AR 63.

The RFC used in the first two hypotheticals, which were relied upon by the ALJ, did not include all of Plaintiff's limitations.[4] When given the third, and most restrictive, hypothetical—which included several of the limitations identified by Plaintiff's treating and examining medical sources—the VE testified that the individual was unemployable. AR 62-63. Given that the medical evidence supports these moderate limitations, the VE's testimony does not support the ALJ's non-disability finding

///

---

[4] The Court also notes that neither of the first two hypotheticals included the limitations that the ALJ identified in step three. *See* AR 24.

16

## V. CONCLUSION

For the reasons explained above, Plaintiff's motion for summary judgment is GRANTED, and this action is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings, including a new administrative hearing, consistent with this order.

The Clerk of the Court shall close this case.

IT IS SO ORDERED.

Dated: March 24, 2015

_____
KANDIS A. WESTMORE
United States Magistrate Judge